LAUTENSCHLAGER, Appellant, v. HAMBURG and others, Respondents.*

*No. 175.   Argued February 3, 1969.—Decided March 4, 1969.*
(Also reported in 165 N. W. 2d 129.)

* Motion for rehearing denied, with costs, on May 6, 1969.

624

626

For the appellant there was a brief by *Henry P. Hughes,* and oral argument by *Thomas E. Hughes,* both of Oshkosh.

For the respondents there was a brief by *Dempsey, Dempsey, Magnusen & Williamson* of Oshkosh, and oral argument by *James J. Williamson.*

HEFFERNAN, J.

*Was there sufficient credible evidence to support the jury's apportionment of negligence*

The jury found both parties to be causally negligent and apportioned 10 percent to the plaintiff and 90 percent to the defendant. The plaintiff, the appellant in this court, takes the position that there is no credible evidence to support the jury's verdict finding her negligent.

We have taken the position that when a verdict of a jury is attacked, it will be sustained if there is any credible evidence under any reasonable view to sustain it. This is particularly true where, as here, the apportionment has received the imprimatur of the trial judge on motions after verdict. *Schwalbach v. Antigo Electric & Gas, Inc.* (1965), 27 Wis. 2d 651, 135 N. W. 2d 263.

In *Ernst v. Greenwald* (1967), 35 Wis. 2d 763, 773, 151 N. W. 2d 706, we stated that this court would set aside a

jury's finding apportioning negligence only if at least one of three factors were present: (1) If, as a matter of law, the plaintiff's negligence equaled or exceeded that of the defendant; (2) if the percentages attributed to the parties (in light of the facts) are grossly disproportionate; and (3) if there was such a complete failure of proof that the verdict could only be based upon speculation.

We find none of these overriding criteria present in the instant case. On the contrary, the apportionment of negligence is clearly supportable by the undisputed evidence. The defendant, respondent herein, does not complain, indeed he should not, in view of the clear testimony that he invaded the opposite lane and did not see the plaintiff until an instant before the impact. The plaintiff, in view of the clear negligence of the defendant, contends that she is not negligent at all. We do not agree, for there is evidence of record that would support a verdict of plaintiff's negligence as to lookout.

It was admitted by the plaintiff that she had a clear and unobstructed view for a considerable distance around the curve to her left; yet she claims that when she first saw the defendant he was less than 28 feet from her. While the form of verdict used did not require particularization of the items of negligence, it is apparent that the plaintiff, not having sooner seen what was in plain sight, was negligent as to lookout. This fact, completely undisputed, and in fact supported by the testimony of the plaintiff, is sufficient to form the foundation for the jury's allocation of 10 percent negligence to the plaintiff.

## Were plaintiff's damages inadequate

The appellant also contends that the damages awarded were, in certain respects, inadequate. No objection is made to the jury's damage verdict for alleged loss of earnings or property damage. The plaintiff confines her attack to the portions of the judgment awarding medical

expenses in the sum of $1,000 instead of $1,562 and awarding only $2,500 for personal injuries.

This court is reluctant to interfere with a jury's determination of damages. *Burlison v. Janssen* (1966), 30 Wis. 2d 495, 506, 141 N. W. 2d 274. This court stated in *Collova v. Mutual Service Casualty Ins. Co.* (1959), 8 Wis. 2d 535, 540, 99 N. W. 2d 740:

". . . a verdict may not be set aside as excessive on appeal unless there is an indication that the award was the result of passion, prejudice, corruption, or a disregard of the evidence or the rules of law. The same rule applies when there is a claim of inadequate damages."

Essentially, a damage verdict will not be disturbed ". . . when there is any credible evidence which under any reasonable view supports the jury finding . . . ." *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. 2d 487, 489, 120 N. W. 2d 692. In the absence of an error of law, we will not upset a judge's post-trial order in regard to damages unless we find an abuse of discretion. *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. 2d 13, 24, 133 N. W. 2d 235.

However, as we pointed out in *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d 601, 148 N. W. 2d 65, that where the jury's damage verdict has been approved by the trial judge, but without an opinion or memorandum setting forth the evidence underlying the verdict or a statement of the judge's rationale in supporting it, the "abuse of discretion" test was not applicable. In the absence of the trial judge's memorandum, setting forth the rationale for his decision, we cannot assume that discretion was, in fact, exercised. In such circumstances, as here (*see also Moritz* and *Ballard, supra*), we are obliged to review the record as a matter of first impression, recognizing, however, that all conflicts in the testimony must be resolved in support of the jury's verdict.

Applying the tests and after reviewing the record, we are satisfied that the jury awards, approved by the trial

judge, are supported by the evidence and are not inadequate.

Plaintiff submitted medical bills that totalled $1,562, but the jury only awarded $1,000. Upon a review of the evidence, it is apparent that some medical bills were admitted into evidence with little or no testimony to support the necessity for the services in relation to the injuries sustained in the July 13, 1963, automobile accident. One such bill was for $214 from the Mayo Clinic. Although one could infer that the purpose of such expenditure was for the diagnosis and treatment of a shoulder injury allegedly sustained in the accident, direct proof on that point was totally absent. Similarly, there was no evidence of the reason for, or necessity of, a gastro-intestinal examination performed at Mercy Hospital or for an eye examination.

Medical bills are not in themselves proof positive of the amount that should reasonably be paid for services necessarily incurred. The mere fact that medical expenses were incurred by a plaintiff does not compel a finding of compensability. The identical problem was discussed in *Seitz v. Seitz* (1967), 35 Wis. 2d 282, 304, 305, 151 N. W. 2d 86. Therein, Mr. Chief Justice CURRIE, speaking for the court, said:

"Lastly, plaintiff complains of the award of $1,800 for medical expenses when the bills actually admitted into evidence with the amounts not crossed off aggregated $2,689.

"With respect to medical expenses the jury is not required to return an award to compensate for the exact amount expended by the person seeking recovery. In Ghiardi, Personal Injury Damages in Wisconsin, at page 83, sec. 6.01, it is said:

" 'Medical expenses are recoverable as part of compensatory damages to the extent of the amount reasonably and necessarily paid or incurred for . . . treatment.'

"The amount paid or liability incurred is merely evidence which can go to the jury to assist it in arriving at a reasonable award.

"The trial court, in commenting on this element of damages in the memorandum decision, stated:

" '. . . the Court feels it has no power to interfere with the jury's finding for it is apparently predicated on their belief that some of the medical expenses though proven to be the obligation of the plaintiff were not necessary.'

"We conclude the award for medical expenses was for the jury to determine."

Appellant also contends that the award of $2,500 for personal injuries was inadequate. While we agree that it is not a generous award, it is not inadequate under the circumstances. There was little doubt that the plaintiff sustained personal injury in the accident. She claimed, and it was undisputed, that upon impact she violently hit her chest and knees against the front of the car. She was obliged to wear a surgical corset and was receiving physical therapy for pain in her back and shoulder until the day of the trial. There was no proof or claim of permanent disability. There was evidence, moreover, of a prior (1957) automobile accident that had caused back and neck pain for a considerable length of time.

In addition there was evidence of hypertrophic arthritis in the spinal area that could well have occasioned pain even in absence of the severe trauma allegedly received in the 1963 accident. There was testimony by a competent physician concluding that there was no relationship between the complaints of 1967 and the 1963 accident. One physician testified that the degenerative changes which plaintiff has suffered and which brought on her complaints are common in people plaintiff's age; and that an overweight, nervous person like the plaintiff, more commonly than others, experience flare-ups of degenerative arthritis.

Part of plaintiff's claim was based upon a reversal of the normal cervical curve. There was evidence that such a reversal of curvature was indicative of muscle spasm induced by pain (and vice versa) and trauma. However, the impact of this testimony was considerably lessened

by evidence that the reversal of the normal curvature had existed at least as long as five years prior to the 1963 accident. It was revealed in X rays taken in 1958.

It is also significant that there was undisputed evidence that the plaintiff was involved in an accident subsequent to the one litigated in this action. In 1965 the car in which she was riding was struck broadside by another vehicle. It was stipulated that the repairs to her car cost $422.51. There was no evidence of the severity of the accident, and no evidence was introduced by the defendant to show that the plaintiff was injured at all in the 1965 accident or that any of her present complaints were attributable to that accident rather than the one being litigated. The plaintiff testified that the impact was like a "BB shot" and that she sustained no injury. One of the examining physicians stated that he had examined her a short time before the 1965 accident, and again after it. He testified that her condition was substantially unchanged, and he could form no opinion that the continued complaints after March of 1965 were attributable to the accident then rather than to the 1963 accident. She had never made a claim for personal injuries as a result of the 1965 accident.

The plaintiff does not claim that the evidence of the 1965 accident was inadmissible. She does, however, object to the instruction of the trial judge that permitted the jury to infer from that evidence that at least a portion of the plaintiff's personal injuries and present complaints were attributable to the 1965 accident and not to the one in litigation.

The instruction to which plaintiff objected and which she contends resulted in prejudicial error provides:

"There is also evidence that the plaintiff was involved in an automobile accident which occurred on March 19th, 1965, subsequent to the collision in question here. If you find that plaintiff sustained injuries in that accident of 1965 which aggravated any previous condition or injuries she suffered from, you can not award any damages to the

plaintiff in this suit for consequences which you may determine to have resulted or will result from the collision of 1965."

We are not satisfied that it was error to give that instruction. As the respondent correctly points out, much if not all of the plaintiff's claim was dependent upon the credence the jury placed upon her recital of subjective symptoms to her physicians and to the jury at trial. Whether she was to be believed, and to what extent, was dependent upon the jury's estimate of her credibility. It would appear that the fact that the plaintiff was involved in another accident which caused fairly substantial property damage, but in which she claimed she was uninjured, would go to the question of her credibility in respect to her assertion that all her injuries were sustained in the 1963 accident and not in the 1957 accident or the 1965 accident.

The mere fact that it was admitted that she had been in an auto accident in 1965 put upon her the duty of persuading the jury that the injuries of 1963 were unaffected or at least not aggravated. The burden of proof, by a preponderance of the evidence, that the injuries were sustained in 1963 and not at some other time was upon the plaintiff. It appears perfectly proper to this court for a defendant to bring forth evidence of another and subsequent accident involving that same plaintiff when it would not be unlikely that such accident could have, in part at least, occasioned the injuries. We cannot conclude that the obligation of the defendant extended to proving by a fair preponderance of the evidence that the plaintiff suffered any injury in the 1965 accident. Any evidence of a subsequent accident, likely to cause injury, was sufficient to cast some doubt on, and at least inferentially to impeach, the plaintiff's story. If a plaintiff is to survive such doubt unscathed, it behooves him to produce such evidence that to the jury is probative of the contention that no injury was sustained in the later accident. In addition such testimony must be believed by the jury.

While there was no direct testimony that plaintiff was injured at all in 1965, it was implicit in the plaintiff's case that her condition was a fragile one, her arthritis having predisposed her to disabling consequences even in the event of a fairly minor trauma.

Certainly the jury might well have concluded that at least some of the present complaints of the plaintiff were not to be attributed to the 1963 accident. Even if the instruction were in error, and under the circumstances we do not find it to be so, we would not find the instruction prejudicial. We cannot conclude that the award for personal injury would probably have been higher if the instruction had not been given. We said in *Lisowski v. Milwaukee Automobile Mut. Ins. Co.* (1962), 17 Wis. 2d 499, 503, 504, 117 N. W. 2d 666:

"A judgment will not be reversed on the ground of misdirection of a jury unless this court is of the opinion after an examination of the entire record that the error has affected the substantial right of the party seeking the reversal. Sec. 274.37, Stats. This is a test of probability, not possibility, requiring the entire evidence to show that had not the error occurred the result would probably have been different."

Even without the alleged error, enough doubt was raised in regard to the cause and seriousness of the plaintiff's injuries that we would not consider the award of $2,500 inadequate. Hence, in the face of the claimed error, we cannot conclude that there was prejudice to a substantial right of the plaintiff when an award in that amount has been made by the jury.

We see no reason why a new trial should be ordered in the interests of justice. All pertinent issues were fully presented by eminently competent counsel in the absence of trial error. We have carefully considered appellant's contention that the defendant's argument to the jury resulted in prejudice to the plaintiff. Such prejudice is

not evident. There is no evidence of a miscarriage of justice, although it is clear that reasonable minds could disagree as to the adequacy of the award. This, however, is not the test to be applied. Reversal in the interests of justice will be ordered only when this court is convinced that there has been a probable miscarriage of justice in viewing the case as a whole. *Estate of Scheibe* (1967), 35 Wis. 2d 89, 150 N. W. 2d 427.

It is not apparent to this court, in view of the entire record, that justice has miscarried.

*By the Court.*—Judgment and order affirmed.